In re Benjamin Larry **EDSALL** & Dorothy Ilene **Edsall**, Debtors.

Dean W. **COLTER**, Nancy B. **Colter**, Dean Colter, Inc., Plaintiffs,

v.

Benjamin Larry **EDSALL** & Dorothy Ilene **Edsall**, Defendants.

Bankruptcy No. 86–1072.
Adv. No. 86–1128.

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Aug. 12, 1988.

J. Frank Kimbrough, Fort Wayne, In., for the plaintiffs.

Thomas Markle, Fort Wayne, In., for the defendants.

## ORDER

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on a motion to withdraw filed by Defendants' counsel in this proceeding. The motion was the subject of a hearing attended not only by the movant but also by counsel for the Plaintiffs.

Plaintiffs' complaint in this adversary proceeding is filed pursuant to 11 U.S.C. § 523. By it, Plaintiffs seek to except all or part of the amounts due them from debtors' discharge. If successfully prosecuted, Defendants would leave this court with $50,000.00 of non-dischargeable debt. Trial of the issues raised by Plaintiff's complaint is currently scheduled for August 26, 1988. There is no successor counsel for Defendants. Accordingly, if the motion is granted they will proceed to trial pro se.

The representation of the Debtors in this bankruptcy has become more complicated, time consuming, and expensive for counsel than initially anticipated. This is largely due to the nature of the issues raised by Plaintiff's complaint. Because of Defendants' financial position, many of counsel's services appear to have gone unpaid. Counsel represents that more than $1,900.00 is due his firm for post-petition services rendered to the Debtors. Of this total, at least one-half is attributed to the bankruptcy and/or this adversary proceeding.[1] In addition to the current unpaid balance, counsel represents that significant amounts have also been written off by his firm.

The lack of payment is the only basis upon which counsel seeks to withdraw. In spite of the non-payment, in response to the court's inquiries, counsel candidly admitted that the attorney-client relationship is not otherwise impaired. The lines of communication appear to remain open and counsel characterized the relationship as a good one.

At the conclusion of the hearing, the court took the issues raised by the motion to withdraw under advisement, in order to dispose of it with a formal written opinion. The fact that the court has elected to resolve counsel's motion by a more elaborate order than is usually the case should not be considered as an adverse reflection upon counsel, his firm, or their practices. Instead, the motion comes at a time when the court has been indulging in a high degree of self examination with regard to the circumstances which warrant giving an attorney permission to withdraw from the representation of his client. Because of this, the court feels it is appropriate to thoroughly discuss these concerns, so that members of the bar can not only understand the reasons for the court's action (even if they do not agree with it) but so they also can understand what will be expected of them when they undertake the representation of a bankruptcy debtor.

■ The obligation to defend a client is one of the paramount obligations of the attorney-client relationship. It is not to be undertaken lightly. Once engaged, however, an attorney may not be relieved of this duty without compelling reasons.

---

1. The court assumes for the purposes of this opinion that counsel has fully complied with the requirements of 11 U.S.C. § 329 and Bankrupt- cy Rule 2016 so that these fees would be properly collectable.

*Smith v. Anderson–Tulley Co.*, 608 F.Supp. 1143, 1146–47 (D. S.D.Miss.1985). Thus, "absent exceptional or unusual circumstances, counsel will be required to represent the debtor-client until the conclusion of the case." *In re Pair*, 77 B.R. 976, 979 (Bankr.N.D.Ga.1987). Counsel may not withdraw without the court's permission. In this, whether the exceptional circumstances or compelling reasons justifying permission to withdraw exist is a matter addressed to the sound discretion of the court. *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir. 1982). One of the reasons for requiring counsel to seek the court's permission before withdrawing from a case is to protect the interests of the client. *In re Annexation of Territory to City of Muncie*, 150 Ind.App. 245, 276 N.E.2d 198, 204 (1971).

A lawyer's duties to his client are, in part, governed by the Rules of Professional Conduct, as adopted by the Supreme Court of the State of Indiana. These rules recognize only three instances in which counsel is required to withdraw from the representation. Withdrawal is mandatory if representation would violate the Rules of Professional Conduct, if the lawyer's physical or mental condition impairs his ability to represent the client, or if the client has discharged the attorney. *Rules of Professional Conduct*, Rule 1.16(a) ("R.P.C."). In all other instances, termination of the representation is optional. Thus, while the Rules of Professional Conduct give the client an absolute right to terminate the relationship, the attorney's ability is more circumscribed. "Good cause" is needed. R.P.C. 1.16(b)(6).

Rule 1.16(b) provides several non-exclusive illustrations of cause which may justify withdrawal. Among them are the client's failure to "substantially fulfill an obligation" to the attorney or where the representation would "result in an unreasonable financial burden upon the lawyer." R.P.C. 1.16(b)(4) & (5). Under either of these illustrations, a client's failure to compensate his attorney may constitute sufficient cause for withdrawing from a case. It is important to note, however, that even where good cause exists for terminating the representation, the Rules of Professional Conduct recognize an attorney's obligation to continue the representation when required to do so by a tribunal. R.P.C. 1.16(c).

Counsel's firm initiated this Chapter 7 bankruptcy on behalf of the Debtor/Defendants. One of the primary purposes for filing bankruptcy and, indeed, the reward to an honest debtor for making a full and complete disclosure of its assets and liabilities and for freely allowing the non-exempt assets to be administered for the benefit of all creditors, is the bankruptcy discharge. The discharge is not, however, available to all debtors or with regard to all debts. Certain actions by a debtor may result in the wholesale denial of the discharge. *See* 11 U.S.C. § 727. Moreover, the nature or origin of certain debts may be such that, as a matter of public policy, Congress has determined they should be excepted from discharge. *See* 11 U.S.C. § 523. Therefore, in many respects, the discharge or lack of discharge may become the alpha and the omega of a bankruptcy proceeding from the perspective of either a creditor or the debtor. Counsel who initiate bankruptcy proceedings on behalf of their clients can reasonably expect that the debtor's right to discharge either all or any of its debts will come under scrutiny and may be challenged in an adversary proceeding. For this reason, a complaint pursuant to either § 523 or § 727 should come as no great surprise to any debtor's attorney.

The importance of the discharge to a debtor cannot be overestimated. In the same fashion, the impact upon a debtor of having the discharge denied or having a substantial debt excepted from discharge cannot be ignored. For a debtor to go through bankruptcy and emerge with substantial obligations excepted from discharge may leave him no better off than if bankruptcy had never taken place. Indeed, in many respects the debtor may be worse off than when the proceeding began. Consequently, any litigation respecting the discharge must be regarded as having potentially serious consequences to the debtor.

Pro se litigants present the court with important concerns. More often than not, they are unfamiliar with legal procedures or the formality of trial practice. For this reason they are to be indulged. Frequently, they lack a workable knowledge of the finer points of the issues being litigated. Thus, at trial, a line of questioning or chain of reasoning may not be pursued because they do not understand its significance— something which usually would not escape the attention of a skilled attorney. In such a situation, the court is confronted with the difficult choice between raising unspoken questions and advancing silent arguments or adopting a more passive role. To follow the first course, while often promoting a decision based on the underlying merits of a case, may tarnish the appearance of judicial impartiality. The second path, while preserving appearances, may result in an unwarranted victory almost by default. Representation by counsel generally eliminates this dilemma.

More important than the difficulties they present to the court is the fact that pro se litigants, in a very real sense, can be a danger to themselves. Without an understanding of the importance of facts in issue, the applicable law, or why their discharge has even been challenged, they often flounder helplessly at trial, aimlessly pursuing meaningless points and arguments. From the standpoint of a debtor whose discharge has been challenged, to proceed pro se presents the very real possibility that the creditor will prevail for the sole reason that its opponent did not understand the facts in issue or how to defend against the allegations raised.

The need for legal assistance is not a function of the ability to pay. It is an unfortunate reality, however, that those most in need of legal services are often those who are least able to afford them. Yet a system of justice in which only the rich or well to do have meaningful access to the courts is no system of justice at all. Thus, it is imperative for legal assistance to be available not only to those who can afford the price but also to those who cannot.

The Rules of Professional Conduct address this imperative.

A lawyer should render public interest legal service. A lawyer may discharge this responsibility by providing professional services at no fee or a reduced fee to persons of limited means.... R.P.C. 6.1.

Thus,

the lawyer's freedom to select clients is ... qualified. All lawyers have a responsibility to assist in providing pro bono publico service. An individual lawyer fulfills this responsibility by accepting a fair share of unpopular matters or indigent or unpopular clients. Comment to R.P.C. 6.2.

In many respects, fulfilling this responsibility may be among the most important roles of the profession.

This obligation of the legal profession diminishes the significance of any cause for withdrawal which might otherwise arise out of the non-payment of fees.

[A]n attorney has certain obligations and duties to a client once representation is undertaken. These obligations do not evaporate because the case becomes more complicated or the work more arduous or the retainer not as profitable as first contemplated or imagined. Attorneys must never loose sight of the fact that 'the profession is a branch of the administration of justice and not a mere money getting trade.' As Canon 44 of the Canons of Professional Ethics so appropriately states: 'The lawyer should not throw up the unfinished task to the detriment of his client except for reasons of honor or self respect.' *In re Pair, supra,* 77 B.R. at 978 (citing *Kriegsman v. Kriegsman,* 150 N.J.Super. 474, 375 A.2d 1253, 1256 (1977)).

The public responsibility on behalf of members of the bar, thus, compels the court to conclude that the non-payment of attorney fees, standing alone, does not constitute sufficient cause for the withdrawal of counsel, given the significance of the issues raised by Plaintiff's complaint.

Having said this, the court is quick to recognize that there may be situations

where the unpaid fees are so great that it would be unfair to the attorney to require him to proceed further. Indeed, the Rules of Professional Conduct address this potentiality. Withdrawal becomes optional where "the representation will result in an unreasonable financial burden on the lawyer." R.P.C. 1.16(b)(5). Similarly, counsel is permitted to decline an appointment to represent a person if it "is likely to result in an unreasonable financial burden." R.P.C. 6.2(b). The comments to the latter section identify such a burden as "a financial sacrifice so great as to be unjust." Precisely what constitutes an unreasonable financial burden will depend upon the lawyer or law firm involved. Conceivably, a burden which would be considered unreasonable or unjust when placed upon a sole practitioner might seem insignificant when imposed upon a major law firm.

█ It is the court's conclusion that where the attorney-client relationship is unimpaired by the actions of the client, so that counsel is still able to effectively represent the debtor, the debtor's failure or inability to pay the attorney's fees does not constitute cause justifying withdrawal, unless the unpaid fees are so great as to impose an unreasonable financial burden upon counsel. Applying this standard to counsel's current request leads the court to conclude that the motion to withdraw should be denied. There has been no impairment or deterioration of the attorney-client relationship and counsel should still be able to effectively represent Mr. and Mrs. Edsall at the forthcoming trial. Most of the work needed to prepare for and conduct that trial has undoubtedly already been done. Consequently, if the fees which would otherwise be due because of this additional work remain unpaid, the court does not feel those fees would significantly increase the burden already imposed upon counsel or the firm. Further, the court does not feel that the likely fees which are yet to be earned, when added to those which are already unpaid and/or written off, constitute an unreasonable financial burden.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the motion of Barrett and McNagny to withdraw as counsel for the debtors be and hereby is denied.